IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EVERETT FRANCIS ROBINSON     *

    Petitioner,     *

v.     *     Civil No. PJM 07-2528
       *     (Criminal No. PJM 02-227)
UNITED STATES     *

    Respondent.     *

## OPINION

Following a jury trial, Everett Francis Robinson was convicted of conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine and 50 grams of cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine and more than 50 grams of cocaine base in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. He was sentenced to 264 months in prison.[1] On appeal, the Fourth Circuit affirmed the conviction and sentence. United States v. Robinson, 186 Fed. Appx. 375 (4th Cir. 2006). Robinson, *pro se*, has now filed two post-conviction motions pursuant to 28 U.S.C. § 2255. First, he has filed a Motion to Vacate, Set Aside, or Correct Sentence, asking that the Court (1) grant him a new trial on the basis of either ineffective assistance of counsel or newly discovered evidence, and (2) that the Court recalculate his sentence. Second, he has filed a Motion for Discovery, requesting the release of (1) "all and any guilty plea offers and/or proffers" and (2) that the Court order defense counsel to produce his "visa" (presumably meaning his passport) for October 2003.

---

[1] Robinson was originally sentenced to 360 months in prison on January 12, 2005. During sentencing, the Court stated that it would impose an alternative sentence of 264 months if the Supreme Court ruled that the Sentencing Guidelines were merely advisory. Later that very day, the Supreme Court reached that conclusion in United States v. Booker, 542 U.S. 220 (2005). Accordingly, the alternative sentence was imposed.

1

Having considered Robinson's Motions and the Government's Response, the Court **DENIES** the Motion to Vacate, Set Aside, or Correct Sentence as well as the Motion for Discovery.

### I.

The basic facts, as recited by the Fourth Circuit on direct appeal, are these:

In July 2001, Detective Phil Joseph of the St. Mary's County, Maryland Sheriff's Department received a telephone call from a confidential informant who claimed that cocaine belonging to Robinson was hidden in a hallway ceiling of a local motel. Joseph searched the ceiling and recovered 260 grams of cocaine and cocaine base.

Detective Joseph, pretending to be a maintenance man from the motel named "Bobby," then called Robinson to discuss the "stuff" he found "in the motel near room 220." Robinson said that "it might be [his]," and a series of telephone calls followed between "Bobby" and Robinson relating to these items and a plan to meet. Rather than meet with "Bobby" personally, Robinson arranged for one of his customers, Perry Brown, to act as the middleman. Based upon the narcotics seized at the motel and the series of telephone calls between Robinson and "Bobby," a state arrest warrant for Robinson was issued.

Robinson was arrested and released pending trial but failed to appear in court. As a result, a second state arrest warrant was issued. On April 12, 2002, Scott Morgan, a long-time customer of Robinson's who was working as an informant, called Robinson at the request of state law enforcement to set up a meeting. When Robinson arrived for the meeting, deputies attempted to arrest him. Robinson fled in his vehicle, hitting one of the patrol cars as he sped away, and a chase involving three police cars ensued.

Robinson was eventually captured and arrested on the state warrant. Police searched the area surrounding Robinson and recovered 461.5 grams of cocaine and 288 grams of cocaine base. After being released on bail, Robinson telephoned Detective Joseph and suggested that they meet the following day to discuss the case against him. Detective Joseph arrived for the meeting accompanied by DEA agents, who arrested Robinson on federal narcotics charges.

Robinson, 186 Fed. Appx. at 376-77 (citations to the record omitted).

## II.

Robinson's Motion to Vacate, Set Aside, or Correct Sentence rests on three grounds. First, he claims that his Sixth Amendment right to counsel was violated due to ineffective assistance of counsel. Second, he collaterally attacks a prior conviction that the Court used in the calculation of his sentence; and, finally, he requests a new trial on the basis of newly discovered evidence.

## III.

Claims of ineffective assistance of counsel are governed by the two-prong test outlined in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires that an individual claiming ineffective of assistance of counsel demonstrate the (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." <u>Id.</u> at 687. The defendant bears the burden of proof as to both prongs, each of which must be satisfied to obtain relief. <u>See Id.</u> at 697 (stating "there is no reason for a court deciding an ineffective assistance claim. . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); <u>see, e.g.</u>, <u>Booth-El v. Nuth</u>, 288 F.3d 571, 583 (4th Cir. 2002) (denying an ineffective assistance of counsel claim because the defendant could not demonstrate that counsel's conduct prejudiced him).

Counsel's performance is deficient when it is unreasonable or not "within the range of competence demanded of attorneys in criminal cases." <u>Strickland</u>, 466 U.S. at 687. The reasonableness of counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986). Judicial scrutiny of counsel's performance must be "highly deferential." <u>Strickland</u>, 466 U.S. at 689; <u>see also Carter v.</u>

Lee, 283 F.3d 240, 248-49 (4th Cir. 2002) (stating that the court does not "grade" the counsel's trial performance). There is a "strong presumption" that trial counsel's conduct and strategy falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002) (noting that a court should avoid second-guessing trial counsel's performance).

A criminal defendant is prejudiced by counsel's conduct when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also id. at 693 (noting that errors are not prejudicial if they only have "some conceivable effect on the outcome of the proceeding").

The Court reviews each of Robinson's claims of ineffective assistance of counsel under these standards.

### A.

Robinson claims first that his counsel was ineffective because he was unable to secure the plea that Robinson desired. Counsel's alleged inability to secure a lenient plea agreement supposedly "forced" Robinson to go to trial where he was "susceptible to a harsher sentencing." This argument lacks both factual and legal merit.

Robinson assumes, with absolutely no basis for doing so, that the sentencing concessions he sought through a plea agreement were in fact available. He claims that he would have pled guilty if the Government had agreed not to "charge him as a career criminal" or not to "file enhancement papers." The Government maintains, however, that any such plea agreement was precluded by Robinson's evasive and dangerous conduct

preceding his arrest. Obviously, then, it can be neither unreasonable nor prejudicial if counsel fails to obtain a plea that is not available. See, e.g., Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993) (holding that counsel's inability to obtain a plea did not render his representation ineffective because the prosecutor would not engage in plea bargaining with his client); Young v. Runnels, 435 F.3d 1038, 1043-44 (9th Cir. 2006) (rejecting an ineffective assistance of counsel claim based on the inability to obtain a plea bargain because the defendant failed to "meet his burden of establishing a reasonable probability that he would have received a more lenient sentence by pleading guilty"). In any event, counsel has proffered an affidavit, which the Court has no reason to doubt, that he explained to him the "benefits of a guilty plea," but that Robinson did not wish to plead. The Court finds incredible the suggestion that counsel "forced" Robinson to go to trial.[2]

**B.**

Robinson next claims that counsel was ineffective because he incorrectly predicted the sentence Robinson might face if convicted at trial. This assertion is contradicted by the objective evidence and it too is rejected.

Robinson alleges that "[b]efore trial, during the course of trial, and jury deliberation, defense counsel advised Petitioner, (and also Petitioner's sister who was a

---

[2] Robinson's Motion for Discovery asks for documents reflecting any plea offer the Government might have made as well as defense counsel's visa records (presumably meaning his passport) so that it may be determined whether counsel was outside the country in October 2003 when counsel says he sent a letter to Robinson and his family discussing the jail time Robinson faced if convicted.
    However, documents reflecting plea offers, even if they exist, would not affect the outcome. After the fact, it is easy for Robinson to say he would have accepted any offer that would result in a sentence less severe than what he eventually received at the trial. The fact the Court accepts is that Robinson refused to plead, period.
    As for Counsel's travel documents, whether or not Counsel may have been traveling when the October 2003 letter was dated and/or sent is also of no consequence. Counsel has sworn that the letter was sent. Even assuming he did travel in October of 2003, the letter could still have been dated and sent in his absence.
    For these reasons, Robinson's Motion for Discovery is **DENIED**.

D.C. Police Officer at the time), that he was facing at most imprisonment of twelve (12) years, if convicted. . ." (emphasis in original). Following trial, however, Robinson was sentenced to twenty-two years in prison. He asserts that had he known such a sentence was a possibility, he would have pled guilty and not risked the sentence associated with conviction.

This argument is meritless. In the first place, of course, there never was a plea offer on the table. Additionally, the Government correctly points to objective evidence that sharply contradicts Robinson's claims that counsel either misapprehended his client's sentencing exposure or that he failed to communicate the risk of conviction to him. In a letter to Robinson's family, sent prior to trial, counsel clearly anticipated the possible sentence that might follow an unsuccessful trial:

> [if] your son or brother loses this case, which in my opinion is very likely, he will most probably spend the next 30 years in federal custody. . . It is my research which suggests that he faces 30 years to life in this case. . .

In a sworn affidavit, counsel avers that he also "discussed with Mr. Robinson the length of imprisonment that he would likely face if he went to trial and was convicted." It strains credulity for Robinson to suggest that he was uninformed about the risks associated with trial.

The presumption of reasonableness that attaches to an attorney's conduct in representing a defendant in a criminal case cannot be rebutted with mere speculation, which is all that Robinson offers here. Robinson's failure to support his assertion with any evidence, other than his own say-so, is fatal to his claim. See United States v. Hodges, 259 F.3d 655, 660 (7th Cir. 2001) (stating "ineffective assistance of counsel claim[s] cannot stand on a blank record, peppered with the defendant's own unsupported

allegations of misconduct"); Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (holding that a claim of ineffective assistance unsupported by "actual proof of [his] allegations" cannot meet the threshold requirement for purposes of § 2255). The Court concludes that counsel did not render constitutionally deficient assistance with respect to communicating with his client about the extent of his potential exposure to jail time were he to go to trial.[3]

### C.

Robinson next claims that counsel "showed his incompetence by making the Petitioner take the stand... then he made a mockery of the trial and court by asking the Petitioner about evidence that was disallowed by the judge." This argument also lacks merit.

When Robinson took the stand to testify on his own behalf, counsel explored the entire situation surrounding Robinson's arrest and allowed him the opportunity to explain his side of the story. The record fails to indicate any professional deficiency on counsel's part; to the contrary, it demonstrates that counsel was entirely reasonable in his direct examination of Robinson.

The Government correctly points out that Robinson's attempt to revisit his decision to testify finds no support in the Sixth Amendment. "[T]he advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter, 283 F.3d at 249 (citing Hutchins v. Garrison, 724, F.2d 1425, 1436 (4th Cir. 1983)). To hold otherwise, would encourage the Court to enter the forbidden territory of second-

---

[3] See n.2.

guessing the strategic decisions of trial counsel. Robinson's claim on this ground is rejected.

### D.

Robinson further claims that his counsel was ineffective because he failed to locate and call specific witnesses. As the Government points out, however, counsel's decision whether to call a witness is a strategic determination that is entitled great deference. See United States v. Terry, 366 F.3d 312 (4th Cir. 2004). To demonstrate a constitutional deficiency in this regard, the defendant must first overcome the presumption of reasonableness that attaches to counsel's decision not to call specific witnesses to testify. That done, the defendant must still demonstrate that the testimony of the uncalled witness would have been "of a sufficiently high probative force probably to generate saving doubt." Washington v. Murray, 952 F.2d 1472, 1479 (4th Cir. 1991). Robinson has failed to satisfy either prong.

He asserts that:

> several witnesses that should have been called that could have put this case in a different manner; A. Tracy Reed, Hotel Manager, B. GEICO Insurance Investigator; C. Garage/Body Shop Mechanic; D. Ralph Warren (Petitioner's lawyer in case that was dismissed); E. Donna Robinson (Perry Brown's girlfriend); F. Lisa McManus (owner of truck – had receipt to show that windows did not work). . . [these witnesses] could have, collectively, provided an effective defense strategy that counsel didn't see or maybe he didn't really want to see.

Robinson claims these witnesses would have allowed his attorney to "try this case in a different manner" and would have "provided an effective defense strategy that counsel didn't see or maybe didn't really want to see." None of these witnesses, however, could have offered testimony as might have generated "saving doubt."

In regard to Tracy Reed, Robinson claims that, had counsel called her, she would

8

have testified that "she had absolut [sic] proof that Petitioner was not a registered guest in the hotel" where the drugs were found and that hotel's security cameras revealed "no pictures of Petitioner coming or going." (emphasis in original). But such testimony would not have demonstrated that Robinson did not otherwise have access to the motel, nor would it have negated the overwhelming evidence that demonstrated the contraband at issue belonged to Robinson. Whether he checked a room out in his name and whether the security cameras happened to catch his comings and goings simply would not undermine the Court's confidence in the result.[4]

Robinson's claim that counsel's failure to locate and call the GEICO Insurance Investigator constituted ineffective assistance of counsel is also without merit. He claims that it was professionally sub-standard not to call the GEICO Investigator because "the insurance agent came to the conclusion that the accident [that occurred when Robinson was fleeing from the police] was the responsibility of St. Mary's Police." Such testimony, however, has no bearing on the issue of Robinson's guilt or innocence and would have done little more than highlight the danger Robinson posed to society when he willfully evaded arresting officers in his attempt to flee. It was an entirely reasonable strategic decision not to call this witness.

The claim that counsel should have called the garage/body shop mechanic and Lisa McManus is similarly rejected. These two witnesses would have supposedly testified that the windows of the car Robinson was driving when apprehended did not

---

[4] Robinson also takes his counsel to task for not challenging the Government's supposed inability to obtain fingerprints from some items found at the motel, although he apparently concedes that counsel did cross-examine the Government witnesses as to this. Robinson implies that counsel should have hired an expert to refute the Government's failure to take fingerprints at the scene. This argument is meritless. The Government had no obligation to take any prints at all, especially where there is strong independent evidence of a defendant's guilt.

work. By extension, Robinson would argue that one of the officers lied under oath when he testified that he saw Robinson throw drugs from the window of his vehicle during the chase. Assuming *arguendo* that counsel's failure to locate and contact these witnesses fell below a standard of objective reasonableness, the failure was still not prejudicial. At most, such testimony would have been cumulative, since the functionality of the windows was clearly addressed when counsel conducted his direct examination of Robinson himself.[5] Since the jury heard evidence regarding this asserted fact and still found Robinson guilty, it cannot be said that additional evidence on this ground would have generated saving doubt. See Washington, 952 F.2d at 1479.

Similarly, counsel's failure to contact Attorney Ralph Warren in no way rendered his assistance ineffective. Robinson asserts that it was a "tremendous lie" that Detective Joseph pulled him over on an arrest warrant that had been issued in October 2001. He claims that such a warrant never existed, presumably intending to argue that his arrest was unlawful, an issue that would have been more relevant to a pre-trial motion to suppress. He asserts, in this regard, that he was in the St. Mary's County Courthouse with Warren, who was his attorney, on charges that were "dismissed." Since the judge did not detain him at that time, Robinson concludes that no warrant could have existed because "no judge or prosecutor would let a person who has a felony warrant attached to his body leave a courtroom when that person is in their possession at that time." This, however, is sheer speculation. In the first place, as the Court of Appeals noted on the direct appeal, a second warrant was in fact issued for his arrest. Moreover, documentary

---

[5] Trial Transcript, Vol. 5, p. 85:
  COUNSEL: Now, tell us what happened once you get – well, first of all, were you throwing anything out of the window when you were driving?
  DEFENDANT: No, because the windows didn't wind down. I could have just opened the door and threw something out, but the windows didn't wind down. That was impossible.

10

evidence would certainly have demonstrated the quashing of the warrant which was the basis for his arrest. In any case, at trial counsel fully addressed the circumstances surrounding the challenged warrant during cross-examination of the arresting officers.[6] The decision not to call Warren did not amount to ineffective assistance of counsel.

Finally, Robinson asserts that counsel should have contacted and called Donna Robinson, his sister, during the defense case. He claims that Ms. Robinson's testimony would have undermined the credibility of the Government's witness, Perry Brown. Specifically, she "could have come to court and proven that Mr. Brown was a liar, a crack smoker and a convicted felon, who was lying to save himself." But Brown's drug abuse and criminal history were clearly highlighted during the Government's direct examination of him.[7] Robinson's attorney also attacked Brown's credibility during cross

---

[6] See Trial Transcript, Vol. III, p. 79:
    COUNSEL: . . . You informed him that there was an open warrant for him, correct?
    DETECTIVE TUCKER: Yes, I did.
    COUNSEL: Do you recall what the warrant was for?
    DETECTIVE TUCKER: I just – no. I know it was an open warrant. I believe for FTA, failure to appear, but I am not certain of that. . .;
see also Trial Transcript, Vol. III, p. 105:
    COUNSEL: Were you– and you were advised that there was a felony, a warrant for Mr. Robinson for felony distribution?
    DEPUTY REPPEL: Yes, sir.
    COUNSEL: Do you know now that it was a failure to appear warrant?
    DEPUTY REPPEL: No, sir.

[7] See, e.g., Trial Transcript, vol. II, pp. 62-4.
    MR. TAIO (AUSA): How much money did you spend on cocaine?
    BROWN: Within one year's time I had managed to spend over $50,000 that I had in savings.
    MR. TAIO: Were you addicted at the time?
    BROWN: I was very much addicted.
    MR. TAIO: Have you ever tried rehabilitation?
    BROWN: Yes, I have.
    MR. TAIO: When did you do that?
    BROWN: I spent ten months at the Hope House in Annapolis.

    . . .
    Mr. TAIO: Do you continue to use crack cocaine, though, you know, now?
    BROWN: Recently? Yes.
    MR. TAIO: When was the last time you used it?
    BROWN: Saturday night.

examination.[8] Thus, even if Ms. Robinson had denied her own involvement with Brown, there is no indication she would have been able to deny that her brother, the Petitioner, was not involved with Brown and drug activities. Her testimony would have generated neither saving doubt nor would it have undermined the Court's confidence in the result.

In sum, the decision by Robinson's counsel not to call the aforementioned witnesses cannot be characterized as either unreasonable or prejudicial. While Robinson claims that had these witnesses been called, his attorney could have tried "the case in a different manner," a defendant's claim that his or her case could or should have been tried in a different manner does not render counsel's actual performance ineffective. Without evidence that counsel's conduct was unreasonable resulting in prejudicial consequences, the Court is not disposed to second-guess the tactical decisions made by him.

### E.

Robinson claims that his counsel's representation was deficient because the "impeachment of various government witnesses, including Morgan, Brown, the St. Mary's detectives and police, and the DEA agent, could have been gotten through deposition and could have been used at trial." This argument totally misapprehends the manner in which criminal cases are tried. The use of depositions in criminal trials is an extraordinary event and permission to depose witnesses is granted by a court only in

---

[8] See, e.g., Trial Transcript, vol. II, p. 108:
    COUNSEL: The government, when is the last time you met with the government to go through your testimony?
    BROWN: I'm sorry. I don't understand your question.
    COUNSEL: When was the last time you met with the government to go through your testimony here today?
    BROWN: What do you mean go through?
    COUNSEL: Well, prepare for testifying. Didn't they tell you the kind of questions they were going to ask you?
    BROWN: They asked me some questions. But as far as telling me exactly what they were going to ask me, no, they didn't.

"exceptional circumstances." As set forth in Federal Rule of Criminal Procedure 15(a)(1):

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of <u>exceptional circumstances and in the interest of justice</u>...

(emphasis added). This rule does "not [operate] to provide a method of pretrial discovery." <u>United States v. Adcock</u>, 558 F.2d 397, 406 (8th Cir. 1977); see also <u>United States v. Steele</u>, 685 F.2d 793, 809 (3d Cir. 1982) ("Fed. R. Crim. P. 15... does not authorize [depositions] as means of discovery"); <u>Simon v. United States</u>, 644 F.2d 490, 498 n.12 (5th Cir. 1981) (stating "the only authorized purpose is to preserve evidence, not to afford discovery"). No "extraordinary circumstances" were present in this case. Indeed, Robinson concedes that these witnesses should have been deposed for discovery or impeachment purposes, not because it was necessary to preserve their testimony for trial, where, for example, it might eventuate that the witness would be unavailable by reason of illness or death. Any claim of ineffective assistance of counsel in this regard therefore is unfounded.

### F.

Robinson next claims that counsel was ineffective because he failed to investigate and exploit "the state's lack of physical evidence." Specifically, he claims that counsel "never attacked" the indeterminate nature of the few fingerprints in the hotel room. This assertion, however, is contradicted by the record. Defense counsel squarely addressed the issue on his cross-examination of Detective Joseph.[9]

---

[9] <u>See, e.g.</u>, Trial Transcript, vol. II, p. 24-5.
COUNSEL: Okay... Was everything that you took out of that ceiling sent for fingerprints?
DETECTIVE JOSEPH: Everything, no.
COUNSEL: Like, for example, the scissors weren't sent, right?
DETECTIVE JOSEPH: No.
COUNSEL: How about the scale?

G.

Finally, Robinson asserts that counsel's representation was "more than inadequate" because he did not effectively execute what Robinson believes was the only reasonable "strategy" in the case. Thus, Robinson claims that "there was only (1) strategy: prove that St. Mary's County Police will abuse citizens, plant evidence, and lie on defendants to win their case." He claims that counsel failed to execute this strategy "by not investigating the police tampering with evidence, by not calling disinterested witnesses to testify, [and] by not showing that each officer on the scene police report was different."

The record sharply undermines this assertion. Counsel in fact aggressively cross-examined every Government witness, including the police officers, attempting to exploit gaps and inconsistencies in their testimony. But, while attempting to show that police witnesses are lying is undoubtedly one strategy counsel can pursue, failure to pursue this tactic to an extreme degree does not automatically render the failure to do so prejudicial. As the Fourth Circuit explained in a factually similar situation:

> It is of course possible that impeachment might sufficiently have shaken her credibility to tip the reasonable doubt balance. It is at least equally possible, however, that the attempt to impeach by this collateral means would have been viewed by the jury as an unwarranted, desperate effort to discredit a witness whose testimony was intrinsically and by demeanor wholly credible. Under Strickland, a mere possibility that the result might have been different does not

---

DETECTIVE JOSEPH: No.
COUNSEL: How about other items, the things like playing cards?
DETECTIVE JOSEPH: No.
COUNSEL: How about the package that held the razor blades?
DETECTIVE JOSEPH: No.
COUNSEL: These are things, would you not, in your experience and training as an officer who has conducted a number of narcotics investigations, you would expect that would have been use[d] by somebody in either preparing cocaine base or some other function in connection with the cocaine trade?
DETECTIVE JOSEPH: Yes.

14

suffice.

Hoots v. Allsbrook, 785 F.2d 1214, 1221 (4th Cir. 1986).

While the manner in which counsel conducted the trial may not be what Robinson desired, an attorney's conduct is not constitutionally deficient simply because it does not meet the defendant's excessively high expectations. See United States v. Rezin, 322 F.3d 443, 446-47 (7th Cir. 2003) (stating "[c]riminal defendants have a right to a competent lawyer, but not to Clarence Darrow"). It would have been unreasonable and contrary to an attorney's code of ethics for counsel to aggressively pursue, absent a factual basis, the line of questioning that Robinson demands. See Maryland Model Rules of Prof'l Responsibility R. 3.1 (2000).

### H.

Standing alone, none of Robinson's assertions rise to the level of ineffective assistance of counsel. He claims, however, that "when the court views all of the past events, the negligence of defense counsel (Barber), and total then [sic] all up, the sum of negligence out-weighs the sum of effective counsel." Such a cumulative review, however, is not recognized for ineffective assistance of counsel purposes; each alleged deficiency must stand on its own. See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) (holding that ineffective assistance of counsel claims, like claims of trial error, must be reviewed individually, rather than collectively); see also Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) (stating "[e]rrors that are not unconstitutional individually cannot be added together to create a constitutional violation").

This argument is therefore rejected.

15

## IV.

In addition to ineffective assistance of counsel claims, Robinson asserts that his sentence was incorrect because the Court erroneously included in its calculus a 1997 conviction for breaking and entering. Robinson claims that this conviction was unconstitutional because he was convicted after being denied his Sixth Amendment right to counsel. Although Robinson does not specifically argue this as an ineffective assistance claim, the Court is prepared to accept it as an ineffective assistance claim.

To this end, Robinson has submitted a computer print-out of the District Court of Maryland for Prince George's Country pertaining to the 1997 conviction. Although the coded records are difficult to decipher, it appears that they may in fact reflect the presence of counsel, since they contain the code "CNSL: C" which may mean that Robinson had counsel. On the other hand, in the body of his Motion, Robinson cites the following colloquy he supposedly had with the Judge at the time of his trial when he said he requested a continuance:

> The Court: "Mr. [Robinson,] do you have a lawyer?"
> Defendant: "No, Your Honor, I do not."
> The Court: "You had sufficient time to get one, we will proceed without one."

It is not clear whether Robinson is merely reconstructing what he remembers the colloquy to have been or whether he is quoting a tape of the proceeding.

But ultimately the includability *vel non* of the 1997 conviction in Robinson's sentencing guideline calculation makes no difference for, even if the conviction is not counted, he still ends up with a guideline range of 262 to 327 months, making the 264 month sentence he actually received, a very low-end guideline sentence, entirely

16

appropriate. Thus, as set forth in the Pre-Sentence Report, Robinson received a total of four (4) criminal history points towards his Criminal History classification: one (1) point for the 1997 breaking and entering conviction; one (1) point for a 1998 conviction for unlawful possession with intent to distribute narcotics; and two (2) points because the present charge was committed while Robinson was under a prior criminal justice sentence. See U.S.S.G. § 4A.1.1©-(d). Normally, these four criminal history points result in a Criminal History Category of III, but where there are two prior felony convictions of either a crime of violence or a controlled substance offense, the Criminal History Category automatically increases from III to VI. See U.S.S.G. § 4B1.1(b). The guideline range of imprisonment for an Offense Level of 38 (which Robinson had) and a Criminal History Category of VI is 360 months to life. See U.S.S.G. Sentencing Table.

But, as it happens, given the relatively minor nature of the breaking and entering conviction, the Court departed from the Pre-Sentence Report's recommendation and sentenced Robinson to 264 months of imprisonment. This sentence was precisely in the range, indeed at the low end of the range, that would have been obtained if the breaking and entering conviction had been completely disregarded. Thus, Robinson's criminal history category for three (3) criminal history points would have been Category II. His Offense Level was 38. The guidelines range for these classifications was 262 to 327 months. In other words, Robinson's sentence of 264 months was at the low end of a guideline range that entirely disregards the 1997 conviction.

Whatever error may have been committed with regard to the 1997 conviction (and it is by no means clear that there was error), it resulted in no prejudice to Robinson. Accordingly, Counsel did not render ineffective assistance in this regard.

17

V.

Finally, Robinson claims that newly discovered evidence warrants relief from his sentence. He asserts that:

> Shortly after [he] received his sentence and awaiting transfer to a federal institution, Scott Morgan, a main witness for the prosecution, telephoned Petitioner's [i.e. Robinson's] Mother and explained all of the details about his part in the conspiracy to convict Petitioner. . . He admitted to lying on the stand to save himself, his girlfriend, and his child. . . Within a span of a month, the prosecution got hold of what Morgan was trying to do, - they silenced him somehow, his whole story changed. . . He [then] said he never made the call, but Petitioner's mother was smart enough to get a record from the phone company proving Morgan called her to confess the truth.

The "general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." Sanchez-Llamas v. Oregon, 548 U.S. 331, 350-51 (2006). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). Since the defendant cannot fit within the established exceptions, his claim of newly discovered evidence is procedurally barred. In order to establish "cause" and avoid the imposition of procedural bar, the defendant must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with. . . the procedural rule." Murray v. Carrier, 477 U.S. 478, 478 (1986) (stating that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard"). Here, the so-called newly discovered evidence was made available

to Robinson well before his direct appeal was filed. Without any showing of cause excusing the failure to bring up this evidence on direct appeal, the matter could not ordinarily be entertained.

But the ultimate problem with Robinson's argument is that it in no way demonstrates his actual innocence. To demonstrate actual innocence, he must show, "in light of all the evidence, [that] it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (internal quotations omitted). But overwhelming evidence clearly supports Robinson's conviction. Furthermore, Morgan's alleged recantation was eventually repudiated by him.

Since Robinson cannot demonstrate cause for failing to present the "newly discovered evidence" on direct appeal and because the purported evidence does not in any case demonstrate his actual innocence, there is no basis to vacate his conviction and sentence on this ground.

## VI.

For the foregoing reasons, the Court **DENIES** Robinson's Motion to Vacate, Set Aside, or Correct Sentence under 28. U.S.C. § 2255 and **DENIES** Robinson's Motion for Discovery.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

December 3, 2008